30    673
118    364

No. 6986.

B. W. SEWELL VS. CHAS. MCVAY, EXECUTOR. McGHEE, SNOWDON & VIOLET, INTERVENORS.

A plea of prescription filed by a defendant impliedly admits the plaintiff's ownership of the note sued on.

Prescription does not run against a debt due by the husband to the wife, during the marriage.

Prescription does not begin to run against a debt due by the father and natural tutor to his children, until his death, or their majority.

Prescription does not run against a debt due by a father's succession to his minor children, during their minority.

APPEAL from the Fifth Judicial District Court, parish of East Feliciana. *Brame*, special judge.

*S. A. Moore* and *J. D. Wedge* for plaintiff and appellant.

*Kennard, Howe & Prentiss, D. C. Hardee*, and *Kernan & Lyons* for intervenors and appellees.

The opinion of the court was delivered by

DeBLANC, J. On the 30th of January 1861, Frank J. Haynes appeared before a notary public of the parish of East Feliciana, acknowledged that he was indebted unto Joseph B. Gribble in the sum of sixty-three hundred and thirty dollars, and—to represent that indebtedness—subscribed and delivered to his acknowledged creditor six

43

notes drawn to his own order and by him endorsed, the payment of which he secured by a conventional mortgage recorded in March 1861 and re-inscribed in March 1873. Mrs. Haynes intervened in said act, and—by her renunciation—gave to that mortgage precedence over whatever rights she herself had on the property hypothecated by her husband.

On the 13th of February 1866, Mrs. Haynes obtained against her husband a judgment for $4302.50, and—from that date—resumed the administration of her separate estate. On the 24th of November 1866, she became the owner—by purchase made for her and at the request of her husband—of one of the six notes delivered by him to Joseph B. Gribble, and which matured on the 23d of January 1862.

Mrs. Haynes died on the 28th of November 1871, leaving three children, who remained under the tutorship of their father until his death, on the 19th of March 1874. Bennett W. Sewell was appointed as tutor of said minors on the 8th of April 1876—and, on the 10th, two days after his appointment, he proceeded on the note acquired by Mrs. Haynes on the 24th of November 1866, and—as tutor—obtained an order commanding the seizure and sale of the property mortgaged to secure the payment of said note.

In accordance with that order, said property was seized by the sheriff, but the sale of the same was enjoined by Charles McVay, as testamentary executor of Frank J. Haynes, on the ground that the note sued upon was barred by the prescription of five years and the mortgage about to be foreclosed perempted by that of ten years. McGhee, Snowdon and Violet, alleged creditors of Frank J. Haynes, intervened in the injunction suit, joined the executor, and—as the latter—rely, in their petition of intervention, on exclusively the prescription of five and ten years. On the trial, the intervenors offered in evidence their judgment against Haynes, a copy of which was to be furnished. It is not in the transcript and we are not informed when and for what amount it was rendered.

The defence presented in the brief filed in behalf of the executor and intervenors is too broad to rest on their pleadings. They contest—in argument—Mrs. Haynes' title to the note sued upon: her title is recognized by a judgment of this court rendered on the 28th of March 1870, and—were it otherwise—their pleas of prescriptions which can be considered but as their answers to the proceedings by the tutor to procure and maintain the order of seizure and sale, impliedly admit—as they do not deny—the alleged, uncontradicted and well established fact that—by inheritance from their mother—the wards of plaintiff are the owners of the note sued upon.

7 R. R. 467; 9 R. R. 518.

The only question to be decided and the only one raised in the pleadings is: Were said note and mortgage barred by the invoked prescriptions? As to the mortgage, it has or at least appears to have preserved its rank, inasmuch as no other mortgage bearing on the property it affects, was recorded between its inscription in 1861 and its re-inscription in 1873. Its fate is—therefore—linked to and depends upon that of the note. As principal and accessory, they must stand or fall together.

Was the note prescribed on the 10th of April 1876, when the notice of seizure and sale was served on McVay, as testamentary executor? It became due on the 23d of January 1862, during the war; the communications remained opened between the City of New Orleans—the residence of Gribble, then the holder of said note—and the parish of East Feliciana—the residence of his debtor, until the 2d of May 1862—three months and nine days. From that time until at least the 4th of May 1865, all communications were effectively interrupted between the City and the other sections of the State. From that date—when they were re-opened, to the 24th of November 1866, when Mrs. Haynes acquired her husband's note, there lapsed one year, 6 months and 20 days. Whilst Gribble retained said note as Haynes' creditor and up to the time when he purchased it for his debtor's wife, there were two intervals of altogether one year and ten months during which he could have brought suit on the same.

This note—after its purchase in the name of and for the benefit of Mrs. Haynes, passed in the possession of the agent of Mrs. Alice O'Donnell, who—in February 1868—filed an action against Haynes to recover its amount. In his answer to said action, he declared that the note sued upon had been bought and paid for by his wife, who intervened in that suit and also claimed said note as belonging to her. Her intervention was dismissed, her demand denied in the lower court. She appealed, and—by a decree of this court—was, eight years ago, recognized as the owner of the disputed note. The judicial assertion of her ownership by her husband, is evidently an acknowledgment by him of his indebtedness to her.

Husbands and wives can not prescribe against each other. That rule is clear, absolute, rational: it covers and protects—not as contended —only those obligations which result from the marital relation, but all others. As regards the actions specified in the 3540th article of the Code, the prescription of five years which runs against minors, interdicted persons and persons residing out of the State, is not applicable to a note due by the husband to the wife. Not being included in that sweeping clause, she is excepted from its effect, and that exception confirms the rule "that the spouses can not prescribe against each other" —and why?

"Il serait contraire à la nature de la société du mariage, que les droits de chacun ne fussent pas—l'un à l'égard de l'autre, respectés et conservés. Un époux prescrivant contre son propre conjoint, un époux obligé d'ager contre son conjoint pour interrompre une prescription, sont des choses qui répugnent et que la loi ne pouvait certes pas permettre. La prescription est donc suspendre ici pour toute la durée du mariage; qu'il y ait séparation de biens ou méme séparation de corps, peu importe, tant que subsiste la qualité d'époux la prescription est impossible.

Marcadé de la prescription, p. 163.   R. C. C. 3523.

At the date of Mrs. Haynes' death, that note passed to her minor children, and—from that date and as to their father and tutor—ceased to be the evidence of a claim actually demandable. Its maturity and the date of its payment were then postponed by law until their majority or their father's death. He could not have sued himself, and had he done so and recovered the amount of the note, he would have received as tutor whatever he would have collected from and paid to himself as a debtor.

"La prescription est suspendue entre tout administrateur légal du patrimoine d'une personne, et cette personne, entre le père administrateur légal et son enfant, entre le tuteur d'un mineur et son pupille, et quant à tous les droits—personnels ou réels, de l'enfant ou de pupille.

Marcadé, de la prescription, p. 165.

When—on the 19th of March 1874—Haynes died, his children were under age, and—as the acceptance of his succession must be considered as having been made for them with benefit of inventory, by mere operation of law, from that date and as to the claim which they have against said succession, no prescription did or could run against them. The Code so provides.

R. C. C. art. 977, 3526.

The note sued upon matured on the 23d of January 1862—was purchased by and became the property of Mrs. Haynes on the 24th of November 1866, four years and ten months after its maturity; and—from that time until two days before the institution of this suit, the then incomplete prescription was continually suspended.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from is reversed, avoided and annulled; and, proceeding to render such judgment as should have been rendered by the lower court.

It is further ordered that the intervention filed in this case by McGhee, Snowdon and Violet is rejected, and that—as tutor of the children born of the marriage of Frank J. Haynes and Maggie Atkinson—Bennett W. Sewell, the plaintiff in this case, have judgment against and recover from the defendant, the succession of the said Frank J. Haynes,

Sewell vs. McVay.

herein represented by Charles McVay, as testamentary executor, the sum of twenty-five hundred and thirty dollars, with interest thereon at the rate of eight per cent per annum from the (23d) twenty-third of January (1862) eighteen hundred and sixty-two.

It is further ordered, adjudged and decreed that the property mortgaged to secure the payment of the note sued upon, and described in plaintiff's petition, be sold—as the law prescribes—to satisfy this judgment; and that defendant and intervenors pay the costs incurred in both courts.