## EKKER v. EKKER.
### No. 1631.

Court of Appeal of Louisiana.   First Circuit.

Oct. 7, 1936.

———◆———

J. H. Inman, of Ponchatoula, for appellant.

Rownd & Tucker, of Hammond, for appellee.

OTT, Judge.

The plaintiff is the second wife of the defendant. She was the foster child of defendant and was reared by defendant and his first wife. After the death of defendant's first wife, he married the plaintiff, who was then about eighteen years of age, while the defendant was over sixty.

Plaintiff claims that her foster mother, the first wife of defendant, gave her some money before her death and that on or about June 1, 1932, after she and defendant had been married about three years, she let him use $1,000 of her separate money with which he bought property for his separate account in Austria, Europe. She avers that he has never repaid this amount, and she is seeking to recover the sum from her husband from whom she was separated from bed and board by a judgment signed on September 20, 1935.

The defendant admits the judgment of separation, but denies that plaintiff advanced him any of her separate money. The judgment of the lower court rejected the demands of plaintiff, from which judgment she prosecutes this appeal.

Defendant filed a plea of prescription in this court based on the allegation of plaintiff that she loaned her husband the $1,000 on June 1, 1932, and the suit was not filed until October 25, 1935, more than three years after the alleged loan was made. He pleads the prescription of three years, under article 3538 of the Civil Code.

■ The plea of prescription is without merit. Article 3523 provides that husbands and wives cannot prescribe against each other. Therefore, prescription does not run during marriage against a debt due by the husband to his wife. Sewell v. McVay, Executor, 30 La.Ann. 673. The marriage of plaintiff and defendant in this case was not dissolved until September 20, 1935, just a little more than a month before the suit was filed. The plea of prescription is overruled.

We are called upon to determine whether or not as a matter of fact plaintiff advanced her husband the amount she is seeking to recover from him. She testifies that she had this amount of separate money which she loaned to her husband. As to where she got this money she testifies as follows:

"Q. Where did you get the money? A. Before mother's death before her operation she called me and told me to get her grip and out of that she gave me $1025.00.

"Q. In what kind of way? A. Of course, after she was gone I looked it over and it was $50.00 and $20.00 and one $5.00 bill.

"Q. How much was it? A. $1025.00, I got $25.00 out of it and took to my own use and rolled the rest back."

She testifies that about June 1, 1932, after they had been married about three years, her husband asked her for this money, as his sister in Austria-Hungary was bad off. She claims that about one year after that he paid her $40 which he said was the interest on the loan, the same as the banks paid. She further testifies that her husband used this money with which to buy property in his own name in Europe.

Defendant denies that the plaintiff loaned him any money. As that is about the only part of his testimony that is in the least intelligible, we take the liberty of quoting that part of it:

"Q. You deny that this present Mrs. Ekker let you have $1,000.00? A. Not correct. Show me a note.

"Q. Unless I can show you something in writing you deny it? A. Yes, sir.

"Q. You understood that all right? A. Yes, sir.

"Q. You deny she gave it to you? A. No true. I say no.

"Q. She had the money, didn't she? A. I don't know."

Defendant admits that he bought some property in the old country for which he paid $2,900 or $3,400. We are not able to tell from his testimony in whose name the title to the property was placed. Nor do we consider that material, if relevant, for the reason that defendant does not plead the investment of his wife's separate funds for her benefit in property purchased in her name, but, on the contrary, he denies in his answer and in his testimony that he received any money from the plaintiff.

■ As the plaintiff's claim is for more than $500 and as she has no written evidence of the debt which she is seeking to collect, it is necessary that her claim be proved by at least one credible witness and other corroborative circumstances. Civ. Code, art. 2277. Assuming that plaintiff is a credible witness (and we have no reason to believe otherwise), we do not find any corroborating circumstances to support her own testimony. She produced a witness to show that about the time the separation suit was tried the defendant sent the witness to his house to get some money hidden in the basement in a shoe. The witness found some $355. However, this does not tend to prove that plaintiff advanced her husband $1,000 some three years previous to that time. If the defendant's testimony is to be construed as meaning that his wife let him have some money to invest in property in her name in the old country, and if his testimony is to be interpreted as failing to prove that contention, it might be said that the conflict in his testimony corroborates hers. But the testimony of the defendant is so broken and evasive that it is almost unintelligible as it comes to us in the record. It seems to us that if he could speak English no better than appears from the record, an interpreter should have been secured in order that both the trial court and the appellate court might have a better understanding of what defendant as a witness was trying to tell.

We cannot close this opinion without remarking that, as it appears from the record, the testimony, as well as the attitude of defendant as a witness, was not only evasive and belligerent, but was absolutely disrespectful to the court and the attorneys. The only reason that we can assume as to why the trial judge permitted this disrespectful conduct is on the theory that he must have believed the defendant meant no disrespect to the court because of a lack of the meaning and proper understanding of the English language.

While we agree with the trial judge that the plaintiff failed to prove her claim with that degree of certainty required by the law, yet, in view of the condition of the record and the possibility of clearer and more understandable testimony being produced, we believe that plaintiff should not be entirely precluded from bringing another suit if she desires to do so. We will therefore enter a nonsuit.

For the reasons assigned, it is ordered that the judgment appealed from be, and the same is hereby, amended; and it is now ordered that plaintiff's demand be, and the same is hereby, dismissed as in case of nonsuit, at her cost in both courts.